Affirmed and Memorandum Opinion filed September 20, 2007








Affirmed and Memorandum Opinion filed September 20,
2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-01039-CR

NO. 14-06-01040-CR

_______________

 

DEMON WILSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause Nos. 1059779 and
1059780

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N








In two
cases tried together, appellant Demon Wilson was convicted of possession of
more than 400 grams of 3,4-methylenedioxy methamphetamine (AMDMA@ or Aecstasy@) and possession of marihuana
weighing more than four ounces but less than five pounds.  On appeal, he
challenges the legal and factual sufficiency of the evidence connecting him
with these substances and contends the trial court erred in admitting appellant=s oral statement and in failing to
appoint counsel to represent him during the time available for the filing of a
motion for new trial.  We affirm.

I.  Factual and Procedural Background

On March
1, 2006, Houston Police Officer Brandon Baker was called to investigate
complaints of a strong odor of marihuana coming from a Houston hotel room. 
Baker knocked on the door of the room, and when occupant Adedire Adeyemo opened
the door, Baker requested permission to enter and look around.  According to
Baker, another room occupant, Darris Devon Mays, approached Adeyemo[1]
and whispered to him, and as Adeyemo turned to listen, Baker had a view of the
interior of the room.  He testified that he saw appellant seated in a chair and
also saw a scale, a large amount of cash, and bags of marihuana and blue pills
on various shelves and tables.  Hotel Manager Wayne Sparks, who had accompanied
Baker to the room, similarly testified that he saw Aa pound or so@ of marihuana, cash, and a number of
cell phones in the room.  Baker testified that he drew his gun and ordered
Adeyemo, Mays, and appellant to the ground, and although appellant raised his
hands, he remained in his chair and made furtive movements.  Baker further
testified that appellant Asaid he had a gun@ and Baker Acould see something black and shiny
in [appellant]=s lap.@  According to Baker, he ordered appellant to drop the gun without using
his hands, and appellant thrust his hips, knocking the gun to the floor. 
Appellant then lay on the floor with his friends while Baker waited for
additional officers to arrive. 








Officer
E.A. Lopez arrived next.  He testified that when he searched appellant, he
discovered Aa huge bag@ of approximately a hundred ecstasy pills in appellant=s right front pocket.  According to
Lopez, appellant asked police to telephone his common-law wife, Astrid
Williams, and tell her of his arrest.  Although this is not usual procedure,
Lopez made the call.  As he explained, AI guess she was pregnant at the time
and he didn=t want her worrying about it.@  According to Williams, Lopez told
her Ahe didn=t find anything on [appellant], but
[Lopez] had to take [appellant] down because he was in the room.@  Lopez did not recall whether he
made such a statement.

Mays
testified that appellant had been sitting in the chair next to the nightstand
but appellant Ahad nothing on him@ and did not bring drugs or weapons to the hotel; however,
Mays stated that the gun was somewhere around the nightstand and within
appellant=s reach,  but he was not sure where the gun was.  Moreover, Officer Paul
D. Steffenauer testified that police found an additional five hundred tablets
of MDMA behind the nightstand.  

Steffenauer
also testified that he separately led each suspect, including appellant, out
into the hallway where he read each suspect his rights, and each suspect
responded that he understood his rights.[2] 
Steffenauer then questioned each briefly about the occupants and contents of
the room.  Steffenauer stated that he asked appellant if any of the money in
the room belonged to him, and appellant replied that Athere was $100 that was his that was
lying on the table where we found all the money.@  Steffenauer also asked appellant if
he had a vehicle at the hotel.  According to Steffenauer, appellant replied
that he had a white Dodge Magnum in the hotel parking lot.  Mays, however,
testified that he drove the white Dodge Magnum to the hotel, and appellant=s common-law wife testified that
appellant had been driving a rented Chevy Impala.  A narcotics canine unit
later searched the Dodge Magnum and discovered an odor of narcotics, but no
narcotics were found.  The rented Chevy Impala was also searched by the canine
unit, and the dog detected no scent of narcotics.








Both
Mays and Adeyemo testified that they were aware that quantities of marihuana
and ecstasy were in the room.  Adeyemo testified that Mays brought at least one
bag of marihuana, but Mays testified that the drugs belonged to another
individual, known only as ABlack,@ who was not present when police arrived.  The hotel manager
confirmed that the room had been rented to a third party.  Both Mays and
Adeyemo testified that they not been in the room more than fifteen or twenty
minutes and that appellant had been in the room no more than ten minutes when
Baker arrived.  Mays said that appellant had come to meet him at the hotel, and
the two planned to have drinks together.  Both Mays and Adeyemo testified that
appellant had arrived at the hotel without any drugs and without a gun. 

At
trial, Officers Baker, Steffenauer, Lopez, John Huston, and Sergeant Herman
Estrella testified that each observed large quantities of marihuana and small
blue pills in the hotel room.  In total, police recovered 1.7 pounds of
marihuana, approximately 2,051 tablets of ecstasy weighting 514.9 grams, 16.1
grams of crack cocaine, 30.5 grams of powder cocaine, and unspecified
quantities of codeine syrup and Xanax.  Mays pleaded guilty to possession and
possession with intent to deliver cocaine and MDMA, and Adeyemo pleaded guilty
to possession of marihuana, MDMA, and cocaine.

Appellant
was charged both as a principal and under the law of parties with possession
with intent to deliver MDMA (Cause No. 1059779) and marihuana (Cause No.
1059780).  The charge included a special instruction that the offenses were
committed while exhibiting a deadly weapon.  The jury convicted appellant of
the lesser charges of possession of marihuana and MDMA but did not find that he
exhibited a deadly weapon.  During the penalty phase of trial, appellant
pleaded not true to enhancements of prior convictions for drug possession and
voluntary manslaughter.  The jury found that the enhancement for prior drug
possession was true, but the prior voluntary manslaughter conviction was not
true.  Appellant received the minimum possible sentence of fifteen years= imprisonment for the MDMA charge and
180 days= imprisonment for the marihuana
charge.             








The
trial court signed a final judgment on September 15, 2006.  On the same day,
appellant=s retained trial counsel filed notice of appeal and a motion to withdraw
as appellant=s counsel and for appointment of appellate counsel.  The trial court
immediately signed the motion to withdraw, but did not specify whether the
motion was granted or denied.  On November 10 and 14, 2006, the trial court
signed additional orders in both the MDMA and marihuana cases, but again failed
to indicate whether defense counsel=s motions to withdraw were granted or
denied.  On November 25, 2006, the trial court appointed appellate
counsel.        

II.  Issues Presented

Appellant
presents four issues on appeal.  In his first and second issues, he challenges
the legal and factual sufficiency of the evidence supporting his conviction for
possession of the controlled substances.  In his third issue, appellant
contends the trial court erred in admitting an oral statement.  Finally,
appellant argues in his fourth issue that the trial court erred by failing to
appoint counsel to represent him during the time for filing a motion for new
trial.

III.  Analysis

A.        Possession of Controlled
Substances

1.         Standard of Review

When
reviewing the legal sufficiency of the evidence, we do not ask whether we
believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19, 99 S. Ct. 2781, 2789 (1979). 
Rather, we examine the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Id. at 319, 99 S.
Ct. at 2789; Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995)
(en banc).  We resolve inconsistencies in the testimony in favor of the
verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).








When
reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we may reverse for
factual insufficiency, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing the evidence, we avoid intruding on the
factfinder=s role as the sole judge of the weight and credibility of the witness
testimony.  See Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000)
(en banc).  Because we accord due deference to the jury=s determination of the credibility of
witnesses and the weight of evidence, we may substitute our judgment for the
jury=s judgment only Ato a very limited degree@ when performing a
factual-sufficiency review.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006) (citing Watson, 204 S.W.3d at 417; Johnson,
23 S.W.3d at 9; and Clewis, 922 S.W.2d at 135).

2.         Elements of Charged
Offenses

To
sustain appellant=s convictions, there must be sufficient evidence that he
knowingly or intentionally possessed MDMA[3]
and a quantity of marihuana weighing between four ounces and five pounds.[4] 
APossession@ means the actual care, custody,
control, or management of the substances.[5] 









A person=s Amere presence at a place where
contraband is being used or possessed by others does not justify a finding that
a person is in joint possession or is a party to an offense.@  Roberson v. State, 80 S.W.3d
730, 735 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).  However, the accused need not
have exclusive possession of the drug.  Id.  Under the Aaffirmative links rule,@ the direct or circumstantial
evidence A>must establish, to the requisite level of confidence,
that the accused=s connection with the drug was more than just fortuitous.=@  Poindexter v. State, 153
S.W.3d 402, 405B06 (Tex. Crim. App. 2005) (quoting Brown v. State, 911
S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc)).  Thus, if the accused is not
in exclusive possession of the place where the drugs are found, there must be
additional independent facts and circumstances that Aaffirmatively link the person to the
contraband in such a way that it can be concluded that the accused had
knowledge of the contraband and exercised control over it.@  Roberson, 80 S.W.3d at 735. 


Relevant
factors that may Aaffirmatively link@ an accused to the contraband
include: 

(1)       the defendant=s presence when
a search is conducted; 

(2)       whether the contraband was in plain view; 

(3)       the defendant=s proximity to
and the accessibility of the narcotic; 

(4)       whether the defendant was under the influence of narcotics
when arrested; 

(5)       whether the defendant possessed other contraband or narcotics
when arrested; 

(6)       whether the defendant made incriminating statements when
arrested; 

(7)       whether the defendant attempted to flee; 

(8)       whether the defendant made furtive gestures; 

(9)       whether there was an odor of contraband; 

(10)     whether other contraband or drug paraphernalia were present; 

(11)     whether the defendant owned or had the right to possess the
place where the drugs were found; 

(12)     whether the place where the drugs were found was enclosed; 

(13)     whether the defendant was found with a large amount of cash;
and 

(14)     whether the conduct of the
defendant indicated a consciousness of guilt.








Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
Although these factors Aare not a litmus test@ for legal sufficiency, they are some
of the additional facts and circumstances that may circumstantially establish
the legal sufficiency of the evidence that an accused knowingly Apossessed@ the contraband.  Evans v. State,
202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).

3.         Evidence of Possession

Here, it
is undisputed that police were called to the hotel room to respond to
complaints of the odor of marihuana.  Appellant was present when the search was
conducted, and drug paraphernalia and large quantities of MDMA and marihuana
were in plain view.  Baker testified that appellant Awas kind of making furtive movements
in the chair that he was sitting at@ and Awas kind of shuffling around.@  Baker further testified that
appellant Asaid he had a gun.@  Baker indicated that he saw the gun was in appellant=s lap,[6]
and Huston identified the weapon as a nine-millimeter semiautomatic.  More than
$21,000.00 was recovered from the room, and according to Steffenauer, appellant
stated that Aa hundred dollars of the money was his . . . .@  Police also recovered drug
paraphernalia typically used to cut and measure narcotics before packaging for
sale.[7]  Additional
MDMA pills were recovered from behind the night stand adjacent to appellant=s chair, and Lopez testified that Aa huge bag@ of MDMA pills was found in appellant=s pocket.

Appellant
concedes that factors arguably linking appellant to the contraband include:

(1)       appellant was present,

(2)       the drugs were in plain view,








(3)       appellant had access to the drugs due to the size of the
hotel room,

(4)       the room smelled of marihuana,

(5)       appellant was possibly in possession of contraband,         

(6)       appellant may have driven the vehicle identified by the
canine unit as a vehicle in which narcotics had previously been located,

(7)       appellant made furtive gestures, and

(8)       other contraband or drug
paraphernalia not included in the charge were present.

Nevertheless, appellant
argues that the evidence shows only that he was present and knew of the
contraband=s existence.  Appellant further contends that there was conflicting
testimony concerning whether appellant was in possession of MDMA.  

Reviewing
the evidence in the light in the light most favorable to the verdict, we
conclude the evidence is legally sufficient to support the jury=s finding that appellant was guilty
as a principal or a party to the charged offenses.  See Sutton v. State,
170 Tex. Crim. 617, 620, 343 S.W.2d 452, 454 (1961) (the length of time the
substance is under a defendant=s control does not determine possession); Borders v. State,
822 S.W.2d 661, 667 (Tex. App.CDallas 1991) (holding evidence legally sufficient to support
conviction of an appellant seated at a table on which were found fifty-six
baggies of crack cocaine marked for sale, two loaded pistols, and twenty-seven
packages of marihuana, and where police also found $4,025.00 cash, a part of
which was lying in plain view on the table and a part of which was inside a
briefcase), rev=d on other grounds, 846 S.W.2d 834 (Tex. Crim. App. 1992) (en banc) (per
curiam).  We therefore overrule appellant=s first issue.








After
considering the evidence in a neutral light, we further hold the evidence is
factually sufficient to support appellant=s conviction.  The State presented
evidence that appellant made furtive movements while seated near the
nightstand, and Baker testified that there was a gun on appellant=s lap.  An additional cache of MDMA
was discovered behind the nightstand.  Regardless of whether appellant brought
the gun or the drugs to the hotel room with him, the evidence supports the
implication that appellant was essentially guarding the drugs at the time of
the arrest and attempted to hide the drugs within his reach or to draw a weapon
when Baker and the hotel manager arrived.  On this record, we cannot say that
the great weight and preponderance of the evidence contradicts the jury=s verdict.  Accordingly, we overrule
appellant=s second issue.

B.        Admission of Appellant=s Oral Statement

Officer
Steffenauer testified that after he read each suspect his rights, he Aasked them questions about the money,
in regards to the money, whose it was, if they knew how much it was, they knew
how much the total was, what amount of it was theirs.@  When the State asked if appellant
indicated that any of the money was his, appellant=s defense counsel objected as
follows:

Your Honor, at this point we would object to this
testimony.  My client has not testified.  At this point we wouldCit might be good for me to take him
on voir dire out of the presence of the jury, but at least let me object to it
at this point in the proceedings from what he=s about to say because my client has
not testified.

The trial court granted
defense counsel=s request to conduct a voir dire examination of Officer
Steffenauer out of the jury=s presence.  Following this examination, defense counsel
stated:

Defense:         Your Honor, that=s all that I have.  We would object to the question in
regard to how much money was his for the purpose that there=s nothing to memorialize the waiver of Miranda[[8]]
and that at this point in the trial, it would beCmy client now has not testified.  At this point it would be premature
in bringing this testimony forward.








Court: Okay.  Let me just understand.  So, your
objection, and I guess it goes along with your motion to suppress, is that
there=s nothing in evidence, other than the officer=s testimonyC

Defense:         That=s number one.

Court: Cabout
Miranda or about him waiving his rights?

Defense:         Right.

Court: And that=sCokay.  All right.  That objection is overruled.

Defense:         Then the secondC

Court: There=s
nothing that prevents him from testifying that he did that.  Nothing in 38.23
that requires that that be written.[[9]]

Defense:         And at this point our position is
since he hasn=t testified, it would be premature to admit that in
evidence.

Court: How is that?

Defense:         Well, he hasn=t taken the stand.  He hasn=t given a statement in regard to the case and at this
point, our position is it would be premature to let that evidence in.

Court: I understand that, but howCI don=tCI guess I don=tCI=m not following
how that would beChow the fact he hasn=t testifiedCdefendant=s
statements come in all the time without the defendant ever hitting the witness
stand.

Defense:         If theCthe testimony that was given in this case about $100 being his, ifCthe evidentiary part of that, theCif that comes in, the question is: Does that help the
jury in their decision as to the facts in this case.  And our position is that
the gravity of that outweighs any harm it may do.

Court: I=m
sorry.  The gravC

Defense:         The gravity of the effect that $100
was his, outweighs the harm it might do with the jury because it=s not really relevant as to the possession of the
drugs that $100 was his.  It=s just saying
$100 was his.  It doesn=t have any relevance as to possession of drugs.

Court: That objection=s overruled. . . . 








The jury was recalled and
Steffenauer testified without further objection that appellant said Athere was $100 that was his that was
lying on the table where we found all the money lying when we came in the room.@

Appellant
now argues for the first time that his statement was inadmissible under article
38.22 section 3(a) of the Texas Code of Criminal Procedure.  This section
provides as follows:

No oral or
sign language statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding
unless:

(1)       an electronic recording, which may include motion picture,
video tape, or other visual recording, is made of the statement;

(2)       prior to the statement but during the recording the accused
is given the warning in Subsection (a) of Section 2 above and the accused
knowingly, intelligently, and voluntarily waives any rights set out in the
warning;

(3)       the recording device was capable of making an accurate
recording, the operator was competent, and the recording is accurate and has
not been altered;

(4)       all voices on the recording are identified; and

(5)       not later than the 20th day
before the date of the proceeding, the attorney representing the defendant is
provided with a true, complete, and accurate copy of all recordings of the
defendant made under this article.

Tex.
Code Crim. Proc. Ann.
art. 38.22 ' 3(a).








To
demonstrate preserved error, the record must show that a timely complaint was
made to the trial court stating the grounds for the desired ruling with
sufficient specificity to make the court aware of the complaint, unless the
specific grounds were apparent from the context.  Tex. R. App. P. 33.1(a); Reyna v. State, 168 S.W.3d
173, 177 (Tex. Crim. App. 2005).  Thus, the party complaining on appeal about a
trial court=s admission of evidence A>must, at the earliest opportunity,
have done everything necessary to bring to the judge=s attention the evidence rule [or
statute] in question and its precise and proper application to the evidence in
question.=@  Martinez v.
State, 91 S.W.3d
331, 335B36 (Tex. Crim. App. 2002) (quoting 1 Stephen Goode, et al., Texas Practice: Guide
to the Texas Rules of Evidence: Civil and Criminal ' 103.2, at 14 (2d ed.1993))
(alteration in original).

Here,
appellant=s complaint on appeal does not comport with his objections at trial 
Accordingly, this complaint has not been preserved for review.  Cf. Hall v.
State, 124 S.W.3d 246, 248B49 (Tex. App.CSan Antonio 2003, pet. ref=d) (mem. op.) (holding that an
appellant failed to preserve complaint regarding the admission of unrecorded
oral statements where he objected at trial only on the grounds that his rights
warning card did not explain that his statements could be used against him,
that he had the right to an attorney, and that he had the right to terminate an
interview); Braddock v. State, 5 S.W.3d 748, 756 (Tex. App.CTexarkana 1999, no pet.) (refusing to
consider a complaint raised for the first time on appeal that trial court erred
in admitting unrecorded oral statements in violation of  article 38.22 section
3(a) of the Texas Code of Criminal Procedure).  Accordingly, we do not address
the merits of appellant=s third issue.

C.        Failure to Appoint Counsel

Appellant=s retained counsel represented him at
trial.  Appellant was sentenced on September 15, 2006, and on the same day, his
retained counsel filed motions to withdraw in the records of each cause
number.  The orders for each motion are the same: AOn the 15 day of Sept,
2006, came to be heard said Motion to Withdraw and same is [blank].@[10]  The trial court signed each order
without filling in the blank indicating whether the motion was granted or
denied.  Also on September 15, 2006, appellant=s trial counsel filed a written
notice of appeal.








On
November 10, 2006, the trial court signed an order in Cause No. 1059780 (the
marihuana case), checking boxes in the preprinted form as follows:

On ____ the
Court conducted a hearing and Finds
that defendant/appellant 

. . .

:         Is indigent for the purpose of 

. . .

:         employing
counsel or paying for a clerk=s and court
reporter=s record.

The Court Orders that 

:                  
Counsel=s motion to withdraw is Granted / Denied.

. . .

:                  
Defendant=s / appellant=s
motion is Granted and 

9         _____________
(attorney=s name & bar card number) is Appointed to represent defendant /
appellant on appeal.

9         The court reporter is Ordered to prepare and file the
reporter=s record without charge to defendant
/ appellant.

On November 14, 2006, the
trial court signed the following similar order in Cause No. 1059779 (the MDMA
case):

On ____ the
Court conducted a hearing and Finds
that defendant/appellant 

. . .

:         Is indigent for the purpose of 

. . .

:         employing
counsel or paying for a clerk=s and court
reporter=s record.

The Court Orders that 

:                  
Counsel=s motion to withdraw is Granted / Denied.

Thus, none of these
orders contain a ruling on the motions to withdraw.








The
deadline for appellant to file a motion for new trial expired on October 15,
2006.  See Tex. R. App. P. 21.4(a). 
On November 14, 2006, the trial court certified appellant=s right to appeal and indicated that
appellant continued to be represented by the same attorney who had defended him
at trial.  The next day, the trial court appointed appellate counsel.

Appellant
contends he was denied his right to counsel at a critical stage of the
proceedings against him because the trial court failed to appoint counsel
within thirty days of sentencing.  We begin our review of this complaint with
the rebuttable presumption that appellant was represented by counsel.  See
Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (en banc) (op.
on reh=g).  Moreover, A[w]hen a motion for new trial is not
filed in a case, the rebuttable presumption is that it was considered by the
appellant and rejected.@  Id.  The burden to produce evidence rebutting each
of these presumptions falls on the appellant.  Benson v. State, 224
S.W.3d 485, 491 (Tex. App.CHouston [1st Dist.] 2007, no pet.) (en banc).








Here,
appellant points to no evidence rebutting the presumptions that he was
represented by counsel and that he advisedly chose not to file a motion for new
trial.  To the contrary, the record supports the presumption that appellant=s trial counsel continued to act on
appellant=s behalf after appellant was sentenced.  For example, during the period
during which appellant could have filed a motion for new trial, appellant=s retained attorney did not merely
move to withdraw, but simultaneously continued to act on his client=s behalf by filing appellant=s notices of appeal and indigency. 
There is no order granting a motion to withdraw, and nothing in the record
indicates that appellant=s trial counsel simply abandoned his client.  In brief, the
record evidence is insufficient to overcome the presumptions that appellant=s trial counsel continued to advise
appellant during the period between sentencing and appointment of appellate
counsel.  See Smith v. State, 17 S.W.3d 660, 662B63 (Tex. Crim. App. 2000) (holding
that facts that appellant filed pro se notice of appeal, trial court appointed
appellate counsel after expiration of window for filing motion for new trial,
appellant was brought to court without counsel when he signed pauper=s oath to receive appointed appellate
counsel, and appellant complained about ineffective assistance of counsel were
insufficient to rebut presumption trial counsel continued to represent
appellant during window for filing motion for new trial); Oldham, 977
S.W.2d at 362B63 (holding that facts that appellant filed pro se notice of appeal and
indigency, trial court noted attorney of record on appeal was Ato be determined,@ trial counsel did not withdraw from
case or conduct any activity after his client was sentenced, and trial court
appointed appellate counsel after expiration of window for filing motion for
new trial were insufficient to rebut presumption trial counsel continued to
represent appellant during window for filing motion for new trial).  We
therefore overrule appellant=s fourth issue.

IV.  Conclusion

We hold
the evidence is legally and factually sufficient to support appellant=s convictions for possession of
marihuana and MDMA, and appellant has failed to overcome the presumption that
he was represented by counsel during the time available for filing a motion for
new trial.  Appellant=s remaining issue complaining of the admission of an
unrecorded oral statement was not preserved for review.  We therefore affirm
the judgment of the trial court.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed September 20, 2007.

Panel consists of Chief Justice
Hedges and Justices Hudson and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Adeymo and Mays are brothers.





[2]  Mays, however, testified that at no time did a
police officer read his rights to him.





[3]  See Texas
Health & Safety Code ''
481.103(a)(1); 481.115 (Vernon 2003).





[4]  Id. '
481.121(b)(3).





[5]  Id. '
481.002(38).





[6]  Specifically, Baker testified as follows:

Q:         Now, in regard to the weapon, you did not
see a weapon until you were alerted to the weapon by Mr. Wilson; is that right?

A:         He said he had a gun.

Q:         Right.

A:         I looked down and I could see that his hands were up and I
could see something black and shiny in his lap.  I took his word for it.





[7]  The paraphernalia included a scale and spoon.  See
Tex. Health & Safety Code
' 481.002(17)(E) (scale); (H) (spoon).





[8]  Miranda v. Arizona, 384 U.S. 436, 444, 86 S.
Ct. 1602, 1612 (1966).





[9]  Tex. Code
Crim. Proc. Ann. art. 38.23 (Vernon 2005).





[10]  Underlined portions were handwritten.